IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

LONNIE E. SIMS, JR., #140701                                                    PETITIONER

VS.                                                        CIVIL ACTION NO. 2:17-cv-19-KS-FKB

STATE OF MISSISSIPPI, ET AL.                                                  RESPONDENTS

## REPORT AND RECOMMENDATION

This cause is before the Court on the petition for a writ of habeas corpus filed by Lonnie E. Sims, Jr., pursuant to 28 U.S.C. § 2254. [1]. At the outset, the Court notes that its review of Sims's conviction is circumscribed. Federal courts do not sit as "super" state supreme courts in habeas corpus proceedings to review errors under state law. *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991). Instead, "[a] state prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Engle v. Isaac*, 456 U.S. 107, 110 (1981)(citing 28 U.S.C. § 2254(a)). Guided by these fundamental principles, the Court has considered Sims's petition, the Respondent's answer, and all related filings. For the reasons that follow, the undersigned recommends that the petition be dismissed with prejudice.

I.      Background

A brief summary of the facts will aid in the consideration of the case. The victim, Tyler Lefan, testified that on June 23, 2006, he was robbed at gunpoint by Sims and Jeremy Walker, Sims's cousin, just after he had entered his parked car at a Minit Mart convenience store in Hattiesburg, Mississippi. *Sims v. State*, 196 So. 3d 180, 183 (Miss. Ct. App. 2016).

Lefan testified that he initially encountered Sims and Walker when they offered to sell him marijuana outside the Minit Mart and before he entered the store. *Sims*, 196 So. 3d at 183.

Lefan declined their offer and entered the store. *Id.* After making purchases and exiting the store, Lefan was once again approached by the men. *Id.* They asked Lefan for a ride to a nearby restaurant, which Lefan refused. *Id.* After Lefan got into his car, Sims and Walker jumped into the vehicle with him and again demanded a ride to the restaurant. *Id.* Lefan testified that when he refused their request, Sims, who was seated in the back seat, held a gun to Lefan's head while Walker, seated in the front passenger side seat, emptied Lefan's pockets of $700 in cash, bank deposit slips, and his and his girlfriend's driver's licenses. *Id.* The men quickly escaped on foot toward a wooded area along the banks of a creek behind the store. *Id.* Lefan re-entered the store, told the cashier that he had been robbed, and asked her to call the police. *Id.* Shortly thereafter, responding officers found Sims lying face down in brush along the creek, attempting to cover himself with leaves. *Id.*

When Sims was taken into custody, the arresting officer found him in possession of $145 in cash and wax that been cut and packaged to mimic crack cocaine. *Id.* The arresting officer transported Sims to the police station for questioning by investigators, and he later transported Sims to the county jail for booking on charges of armed robbery and possession of a counterfeit controlled substance with intent to distribute. *Id.* During the ride to the county jail, Sims reportedly made an unsolicited statement to the officer that the $145 in cash found on him at his arrest had been obtained from the robbery, not from the sale of counterfeit crack cocaine. *Id.* at 183-184.

A jury convicted Sims of armed robbery in the Circuit Court of Forrest County, Mississippi, on June 11, 2008. *Id.* at 184. The trial court sentenced Sims to a term of thirty (30) years in the custody of the Mississippi Department of Corrections ("MDOC"), with five years

suspended, followed by five years of post-release supervision. *Id.* at 182. Sims's attorney did not pursue a direct appeal. *Id.* at 184.

On December 23, 2013, Sims filed a *pro se* application in the Mississippi Supreme Court for leave to file a motion for post-conviction relief. *Id.* On February 6, 2014, the Mississippi Supreme Court dismissed the application without prejudice because Sims had never pursued a direct appeal of his conviction. *Id.*

Sims filed a pro se motion for a new trial, or in the alternative, a judgment notwithstanding the verdict on May 23, 2014. *Id.* The trial court entered an order denying the motion on August 8, 2014. *Id.* at 184-185. Construing this order as denying both Sims's 2014 motion for new trial and his 2008 motion for a new trial, the Mississippi Court of Appeals found Sims' August 22, 2014, notice of appeal to be timely filed. *Id.* at 185. On May 21, 2015, the Mississippi Court of Appeals appointed appellate counsel for him. *Id.*

On direct appeal, Sims's counsel raised one assignment of error, as follows:

1. Whether the verdict was contrary to the overwhelming weight of the evidence.

Sims filed a *pro se* supplemental brief raising four additional errors, as follows:

1. Whether Lefan's (the alleged victim's) testimony was "duplicitous" and "impermissibly suggestive[;]"
2. Whether Sims was denied his constitutional right to a fair and impartial jury;
3. Whether Sims received ineffective assistance of counsel; and
4. Whether there is newly discovered evidence requiring reversal of his conviction.

*Id.* at 185. Finding no error, the Mississippi Court of Appeals affirmed Sims's conviction and sentence. *Id.* at 182. Sims did not seek a rehearing and, therefore, could not seek *certiorari*

3

review before the Mississippi Supreme Court.

Thereafter, Sims filed a motion for post-conviction collateral relief before the Mississippi Supreme Court and raised several grounds, summarized as follows:

1. The State's eye witness was "duplicitous" in giving his testimony about the photo line-up and was "impermissibly suggestive" in violation of the Fourteenth Amendment and Article III, Sections 5-32 of the Mississippi Constitution.
2. The State's central witness gave false testimony under cross-examination in violation of the Sixth, Eighth, and Fourteenth Amendments, as well as the Mississippi Constitution and the United States Supreme Court cases *Brady v. Maryland* and *King v. State*.
3. There was racial discrimination in selection of jurors, which is prohibited by the Sixth and Fourteenth Amendments, as well as the United States Supreme Court cases of *Batson v. Kentucky* and *Smith v. Texas*.
4. Petitioner suffered ineffective assistance of counsel at trial and on his direct appeal in violation of the Sixth Amendment and Article III, Sections 5-32 of the Mississippi Constitution:
   a) when counsel failed to adequately investigate the State's witness; and
   b) when counsel failed to object to the law enforcement officer's testimony regarding Sims's unsolicited statement.
5. An officer gave improper testimony regarding an alleged statement made by Sims to the officer in violation of the Fifth and Fourteenth Amendments, and Article III, Sections 5-32 of the Mississippi Constitution.
6. Newly discovered evidence demonstrates his innocence.

[15-8] at 6-7, 10. On December 15, 2016, the Mississippi Supreme Court denied relief, finding that Sims's claims "are either barred by the doctrine of res judicata, *Walker v. State*, 863 So. 2d 1, 27 (Miss. 2003)(citations omitted), or fail to present a substantial showing of the denial of a state or federal right. *Loden v. State*, 43 So. 3d 365, 377-78 (Miss. 2010)(citation omitted)." [14-3] at 1-2.

Sims timely filed a petition for habeas corpus relief in this Court. *See* [1]. In his petition, he raises the following grounds for relief, summarized as follows:

1. Ground One: The verdict was contrary to the overwhelming weight of the evidence.
2. Ground Two: The alleged victim gave false testimony.
3. Ground Three: Petitioner was denied a fair and impartial, race-neutral jury of his peers in violation of the Sixth Amendment, *Smith v. Texas*, and *Batson v. Kentucky*.
4. Ground Four: Petitioner suffered ineffective assistance of counsel when:
    a) trial counsel failed to adequately investigate the State's witnesses;
    b) trial counsel failed to object to a law enforcement officer's testimony regarding Sims's unsolicited statement; and
    c) appellate counsel failed to submit an effective appeal.
5. Ground Five: Newly discovered evidence demonstrates his innocence.
6. Ground Six: The State Assistant Attorney General withheld exculpatory evidence.

[1] at 1-15. The State has responded to the petition, and the matter is ripe for review.

II.     <u>Discussion</u>

Sims's claims for relief are governed by the standards set forth in 28 U.S.C. § 2254(d). As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), § 2254(d) provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The phrase "contrary to . . . clearly established Federal law," under Section 2254(d)(1), means the state court either "applie[d] a rule that contradicts the governing law set forth in our cases" or in a case with facts "materially indistinguishable from a decision of this Court" arrived at a different conclusion. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000).

In *Wiggins v. Smith*, 539 U.S. 510 (2003), the Supreme Court reiterated that "the 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." 539 U.S. at 520 (quoting *Williams,* 529 U.S. at 413). Thus, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

6

The Supreme Court has observed that "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). There is a "'highly deferential standard for evaluating state-court rulings' . . . which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)(quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)).

In reviewing the state court's factual findings, including implied findings, this Court defers to the state court's factual determinations unless they were "'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000)(quoting 28 U.S.C. § 2254(d)(2)). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98. In the absence of a statement of reasons from the state court, "a [federal] habeas court must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* at 102. According to the Supreme Court, this inquiry is the "'only question that matters under § 2254(d)(1).'" *Id.* (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Although a petitioner may have presented the state court with what the federal court believes to

7

be a "strong case for relief[, it] does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.

As both the United States Supreme Court and the Fifth Circuit Court of Appeals have recognized, a criminal defendant is not constitutionally entitled to a perfect trial, just a fair one. *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986); *Sawyer v. Butler*, 848 F.2d 582, 594 (5th Cir. 1988). Perceived improprieties do not warrant habeas corpus relief. *Turner v. Johnson*, 106 F.3d 1178, 1188 (5th Cir. 1997).

With these tenets in mind, the Court concludes that Sims is not entitled to habeas relief. Sims has pointed to no controlling authority to which the decision in his case runs contrary. Nor has Sims demonstrated that the decision in his case was unreasonable in light of the evidence presented. The Court now turns to discuss the grounds for relief presented by Petitioner.

A. Ground One:  Was the verdict contrary to the overwhelming weight of the evidence?

Petitioner argues that the verdict was contrary to the overwhelming weight of the evidence. Petitioner's counsel raised this issue in the direct appeal of his conviction. An argument challenging the weight of the evidence, however, does not state a cognizable claim for federal habeas relief.  *See Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985), *cert. denied*, 476 U.S. 1123 (1986); *see also*, *Jordan v. Epps*, Civ. Action No. 3:09cv544-DPJ-FKB, 2012 WL 5997046 (S.D. Miss. Aug. 8, 2012). "Simply put, differences in opinion go to the weight of the evidence, not to its admissibility, and such disputes are within the province of the jury to resolve." *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). Accordingly, Sims's challenge to the weight of the evidence is not a valid claim for habeas corpus review.

B. Ground Two: Did the alleged victim give false testimony?

8

Sims argues that the State was aware that the alleged victim, Lefan, gave false testimony that led to his conviction. Sims first asserts that the prosecution knew that Lefan lied when he testified that he had never been convicted of any felony. *See* [15-2] at 108. Sims also argues that the prosecution was aware that Lefan gave false testimony regarding the circumstances surrounding the photographic line-up in which he identified Sims as one of the persons who robbed him. *See id.* at 96-101. Sims argues that the witness's testimony was "impermissibly suggestive." [2] at 12.

To obtain relief on his claim that the state knowingly introduced false testimony, petitioner "bears the burden of establishing that the evidence was false, that the false testimony was material, and that the prosecution offered the testimony knowing it to be false." *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000)(citing *Giglio v. United States,* 405 U.S. 150, 153-154 (1972)).

Sims has failed to meet his burden on both of his arguments. He has failed to demonstrate that Lefan's testimony denying a felony conviction and the circumstances of the photographic line-up were false. He has offered no evidence, other than his unsupported arguments, that Lefan's testimony was in any manner false. Moreover, his arguments regarding the photographic line-up are conclusory and contrary to other testimony offered at trial. "Mere conclusory statements do not raise a constitutional issue in a habeas case."  *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982). Accordingly, this claim does not form the basis of habeas relief.

C.  Ground Three:  Was Petitioner denied a fair and impartial, race-neutral jury of his peers?

Sims argues that he was denied a fair and impartial jury because the prosecution struck every black juror for reasons that were not justified, in violation of *Batson v. Kentucky*, 476 U.S.

79 (1986), and *Smith v. Texas*, 311 U.S. 128 (1940). He also argues that the prosecution unjustifiably struck female black jurors. *See* [2] at 22; [15-2] at 56-62. Sims presented these arguments in his direct and collateral appeals.

Petitioner's citation of *Smith* does not provide a basis for habeas relief in this case. *Smith* concluded that the Fourteenth Amendment prohibits racial discrimination in the selection of grand juries. *Smith*, 311 U.S. at 132. Because Sims alleges racial discrimination in the selection of the petit jury at his trial, not the grand jury that indicted him, *Smith* simply has no application in this instance.

Sims argues that the state's use of peremptory strikes on four female African American jurors violated *Batson v. Kentucky,* 476 U.S. 79 (1986), which prohibits purposeful racial discrimination in the selection of petit or trial juries. A criminal defendant asserting at trial that the prosecution has violated *Batson* must by the "totality of the relevant facts" first make a prima facie showing that the prosecution has exercised its strikes in a racially discriminatory manner. *Id.* at 93–94, 96–97. If a prima facie case is made, the burden of production then shifts to the state to articulate a race-neutral reason for striking the venire member. *Id.* at 97. A reason is deemed to be race-neutral unless a discriminatory intent is inherent in the prosecutor's explanation. *Hernandez v. New York,* 500 U.S. 352, 360 (1991). The defendant may offer rebuttal to the reason given by the state. The trial judge then makes a determination as to whether the defendant has sustained his overall burden of proving purposeful discrimination. *Batson,* 476 U.S. at 98. A trial court's decision on the absence of purposeful discrimination is a "pure issue of fact." *Hernandez,* 500 U.S. at 364.

The prosecutor struck the first juror, Ms. Wilborn, Number 3, because she failed to make

10

eye contact with him. The prosecutor struck the second juror, Ms. Brown, Number 15, because she worked as a manager at a Minit Mart in the defendant's neighborhood. Exercising a third strike, the prosecutor struck Ms. Barnes, Number 27, because she admitted she was hard of hearing. For his fourth strike, the prosecutor struck Ms. Jones, Number 31, because she did not complete her juror information card and was non-responsive to the prosecutor's questions, while being overly friendly and agreeable with defense counsel, during voir dire. After a *Batson* challenge was raised by defense counsel, the trial court found that the prosecution had articulated race-neutral reasons for striking all of them. The Mississippi Court of Appeals considered this argument on direct review and found that the trial court did not abuse its discretion in accepting the State's race-neutral reasons for the strikes. *Sims*, 196 So.3d at 187.

Under AEDPA, the role of a federal court considering a *Batson* claim is to determine whether the state court's factual finding was unreasonable in light of the evidence. § 2254(d)(2); *Miller–El v. Dretke,* 545 U.S. 231, 240 (2005). In making that determination, the court is to presume the court's findings on the prosecutor's intent to have been correct, and that presumption can be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller–El,* 545 U.S. at 240; *Murphy v. Dretke,* 416 F.3d 427, 432 (5th Cir. 2005). In this case, the prosecutor offered plausible race-neutral reasons for each of the strikes, and the trial court accepted the reasons given by the State. Sims has failed to come forward with clear and convincing evidence to rebut the presumption that this Court must give to the state court's findings of no discriminatory intent. Accordingly, habeas relief is not warranted on this ground.

D. Ground Four: Did Petitioner suffer ineffective assistance of counsel?

Sims argues that he suffered ineffective assistance of counsel at trial and on direct appeal.

11

He asserts that his trial counsel failed to adequately investigate the State's witnesses and failed to object to a law enforcement officer's testimony about Sims's unsolicited statement. Petitioner also argues that his appellate counsel failed to submit an effective appeal.

An ineffective assistance of counsel claim is analyzed under the two-prong test found in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The question for this Court is whether the state court's application of the *Strickland* standard was unreasonable. *Mitchell v. Epps*, 641 F.3d 134, 141 (5th Cir. 2011). To meet the *Strickland* standard, first, petitioner "must show that counsel's performance was deficient." *Strickland,* 466 U.S. at 687. If a petitioner can establish deficient performance by his attorney, then he must also demonstrate the second prong of *Strickland*, "that [his attorney's] deficient performance prejudiced [his] defense." *Id.*

The standard of review of an attorney's performance is "highly deferential," considering only the facts and resources available to the petitioner's counsel at the time of trial. *Id.* at 689; *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir.), *cert. denied*, 513 U.S. 960 (1994). When considering an ineffective assistance of counsel claim, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. When applying *Strickland* and section 2254(d), review is "doubly deferential." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009); *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011). As stated in *Mitchell v. Epps*, 641 F.3d 134 (5th Cir. 2011),

> For the district court, "[t]he pivotal question [was] whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*[,131 S. Ct. at 785.] "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 788. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the

12

state court's decision." *Id.* at 786.

*Mitchell,* 641 F.3d at 141(alternations, except citation alteration, in original)(citation omitted). With this high standard of deference in mind, the Court turns to evaluate Sims's claims that his trial and appellate counsel were both ineffective.

1. Did trial counsel fail to adequately investigate the State's witness?

Sims alleges that the victim, Lefan, had a criminal record, which his counsel failed to investigate. On cross-examination, Lefan testified that he had never been convicted of a felony and that his license had never been suspended. Sims has failed to support his allegation with any evidence. Although *pro se* habeas petitions must be construed liberally, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Woods,* 870 F.2d at 288 n. 3; *see Ross v. Estelle,* 694 F.2d 1008, 1011-12 & n. 2 (5th Cir.1983) (refusing to hold evidentiary hearing based on petitioner's bare assertions of ineffective assistance). Moreover, Petitioner has failed make a specific showing of how this alleged error was constitutionally deficient and how it prejudiced his right to a fair trial, thus the claim is without merit. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

2. Did trial counsel err by failing to object to an officer's testimony regarding Sims's unsolicited statement?

When Sims was arrested, officers found $145 in cash on his person, along with wax that had been cut and packaged to look like crack cocaine. *Sims*, 196 So. 3d at 183. Sims argues that his counsel failed to object to an officer's testimony that Sims later told the officer that he had obtained the money from the victim, Lefan, rather than from a counterfeit drug sale.

Contrary to Sims's arguments, his counsel fought the admission of this officer's

13

testimony. Prior to trial, counsel moved to suppress the officer's proposed testimony on this issue. [15-2] at 63-66. When the officer was on the stand at trial and before the officer provided this testimony, Sims's counsel objected again. [15-3] at 13. On cross-examination, counsel thoroughly interrogated the officer about Sims's statement, questioning its voluntariness and whether the officer's version of the event was trustworthy. [15-3] at 14-22. Although the trial court ruled against Sims's counsel regarding the admission of the testimony, adverse rulings by the trial court do not equate to ineffective assistance of counsel. Perceived improprieties do not warrant habeas corpus relief. *Turner v. Johnson*, 106 F.3d 1178, 1188 (5th Cir. 1997). And Petitioner has failed to meet his burden of "showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98. Because the state court's application of the *Strickland* standard was reasonable, this argument does not provide the basis for habeas relief.

    3. <u>Did appellate counsel file an effective appeal?</u>

Without specifying how his appellate counsel failed him, Petitioner asserts in one sentence that his appellate counsel was ineffective. *See* [1] at 12. Conclusory claims of habeas relief, presented without any analysis or argument, are insufficient to warrant federal habeas relief. *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990). Moreover, the undersigned finds that the Mississippi Supreme Court's decision on this issue is neither contrary to, nor did it involve an unreasonable application of, clearly established federal law. Accordingly, this argument does not provide the basis for habeas relief.

E. <u>Ground Five: Does the affidavit of Sims's accomplice constitute newly discovered evidence warranting habeas relief?</u>

Sims argues that a 2011 affidavit presented by his accomplice and cousin, Jeremy

14

Walker, demonstrates his innocence and, therefore, entitles him to habeas relief. See [1-4] at 10. In the affidavit, Walker corroborates Sims's testimony that Lefan gave them the money so they could locate prescription pain medication for him, that the gun belonged to Walker, and that Sims never held the gun on anyone. *Id.* In other words, Sims argues that this newly discovered evidence proves that he is actually innocent of the crime for which he was convicted. Petitioner raised this issue in both his direct appeal and his post-conviction collateral relief proceeding.

Even so, claims of newly discovered evidence offered to establish actual innocence are not cognizable on federal habeas corpus review. *Herrera v. Collins,* 506 U.S. 390, 400 (1993); *see also Graves v. Cockrell,* 351 F.3d 143, 151 (5th Cir. 2003); *Lucas v. Johnson,* 132 F.3d 1069, 1074 (5th Cir. 1998). On the contrary, "a claim of actual innocence is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera*, 506 U.S. at 404. It does not state an "independent, substantive constitutional claim," necessary for warranting habeas relief. *Id.* "Few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence." *Id.* at 401. Accordingly, this ground does not provide the basis for habeas relief.

    F.   Ground Six: Did the State withhold exculpatory evidence from the defense?

Petitioner argues that Walker's affidavit demonstrates that the State withheld exculpatory evidence from the defense. In his petition, he argues that the affidavit is "self-explanatory" and that the same weapon used to convict him is the same weapon used to convict Walker of the crime of felon in possession of a firearm. [1] at 15. In his collateral proceeding, Sims argued that the affidavit showed that the State knew that the gun used in the robbery belonged to someone

15

else, that Sims's fingerprints were not found on the gun and, instead, Walker's fingerprints were found on the gun. [2] at 57-58. Sims asserted that the State withheld this information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

The due process clause requires the state in a criminal prosecution to disclose evidence favorable to the defendant that is material to guilt or punishment. *See Brady*, 373 U.S. at 86-87. To establish a *Brady* violation, a defendant must show that the state withheld evidence, that the evidence was favorable to the defendant, and that the evidence was material to the defense. *Avila v. Quarterman,* 560 F.3d 299, 305 (5th Cir. 2009). This Court's review of the state's decision on this argument is highly deferential and limited to determining not whether the state court's application of *Brady* was incorrect, "but whether that determination was unreasonable – a substantially higher threshold." *See Schiro*, 550 U.S. at 473.

In this case, the state court's application of *Brady* was not unreasonable. There is simply no evidence whatsoever to suggest that the State withheld Walker, Sims's cousin, as a witness at trial. Instead, testimony at trial in March 2008 indicated that Walker still had not been apprehended. [15-3] at 27. Testimony at trial also showed that no fingerprints of Sims were found on the gun, [15-2] at 129, but that Walker's fingerprints were found on the gun's magazine, *id.* at 135-136, the same information that Sims now argues was withheld. [2] at 57-58. Furthermore, Walker entered a guilty plea to the charge of possession of a firearm by a convicted felon in October 2008, seven months *after* Sims's March 2008 conviction. [1-4] at 10. Thus, because the State could not have withheld information at Sims's March 2008 trial regarding Walker's October 2008 plea and sentence, no *Brady* violation could have occurred. Accordingly, this argument does not form the basis for habeas relief.

III.    <u>Conclusion</u>

For these reasons, Sims's petition should be denied, and this matter should be dismissed with prejudice.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 27th day of January, 2020.

                                        /s/ F. Keith Ball
                                        UNITED STATES MAGISTRATE JUDGE